It pleases the court. My name is Cal Potter. I represent the appellant Kevin Curtin. Knowing that this court is familiar with the facts of the case, I'd like to focus upon the overwhelming prejudice that occurred as a result of the admitting of five novellas, as well as references to over 100 novellas that dealt with very taboo issues of incest and engagements of sexual crimes between family members and submit to the court, as we did to the trial court, that the Shemitovitz case should have been followed. And because of the overwhelming evidence in the 403 analysis, that these particular stories, as well as the reference to the other 100 or so stories that were contained upon the personal digit assistant or a palm pilot type device, should never have been admitted to the case. The defense was that it was a role-playing situation. The lack of intent. Correct, Your Honor. It was a lack of intent. Wasn't it quite clear that the evidence that you complain of shed light on the defendant's intent? Because there was no showing. One of the concerns the court had was the same thing. How do you show that this individual even read these stories or had any knowledge of them? And what was it? Where were the stories? They were on a palm pilot or a personal digit. Whose was it? It was his. And didn't he admit it was his? He did admit that it was his. Is it a fair inference that his palm pilot had been read or programmed by him? What it occurred was they brought in an FBI agent specifically to deal with this, and he was an expert in these type of devices, and they have these types of cases all over the country. All I could testify to was that, in fact, he had downloaded this information. There was no showing of it. Mr. Curtin had downloaded the information at some point in time, but there was no showing that, in fact, he had even read these. And what occurred in the case was that he had downloaded them while he was asleep. I mean, I don't mean to make light of this, but you have to make choices when you download things. Well, you make choices, but it doesn't necessarily show what the intent is. And it doesn't show what we're trying to deal with in this particular matter, whether the intent in downloading these would also show that he was, in terms of the role playing or involved with this FBI agent and police officer who also was role playing, whether, in fact you say your client showed up expecting to find an adult role playing the part of a child. That's correct, Your Honor. So why is it then when he walks in and he sees an adult dressed in the clothes of the child, that doesn't, I mean, that doesn't set off the light. It's exactly what I expected. Instead, when he sees an adult, he turns tail and leaves. I mean, it seems to me close to preposterous. I was looking for an adult. So he looks at one and leaves. No, it was a younger, much younger person than what he was believing. He believed that it was a role playing situation on the computer. And therefore, when he walked into the Suncoast bowling alley and didn't see anyone that fit that age, he left. In fact, the woman that was there, there was a decoy. It was an adult wearing the clothes of the child that was sent to him on the. His testimony was that he was, in fact, looking for an older individual. And that was true as to the voluntary statement that he gave also, Your Honor, in terms of. How old was the decoy sitting there with the child's clothes on? She was in her early 30s. And he was looking for an older person. He was looking for somebody between 30 and 40, wasn't he? He was looking for an older person. He fit the description of exactly what he wants us to believe he was looking for. So instead of saying, wow, here she is, he leaves. Isn't that rather odd? So doesn't the evidence of intent become quite relevant? Intent is a part of the elements of the crime. Case. It's a part of the crime. But what is important, Your Honor, is prove the elements by the facts of the case. So what you have, if you bring in extremely inflammatory type stories, I mean, the argument would be no different if he owned Lolita and they were not involved in the murder. If it was a murder, then you would have a situation where, arguably, you could bring in some kind of thing to show intent. So if you owned Macbeth or you had Hamlet, would you be able to bring in those stories to try and show that an individual had intent to commit a murder? And his question. Well, you have to show us this was an abuse of discretion. The other side says all of this is inextricably intertwined because he had the PDA with him when he contacted what might have been a young girl. But he didn't read it. He didn't show it to him. There was no discussion over the Internet. And clearly here they have an opportunity because they're orchestrating all of the conversation over the Internet. It's an agent, the full time. There is clearly no child involved in this crime. And so what you have is an agent who had the opportunity, either through discussion or otherwise, to talk about that. So there was no showing of any nexus. It isn't inextricably intertwined. It's completely different. The facts are completely different. More importantly, this deals with the most forbidden issues in society, the most taboo dealing with a father and a child. One of them talks about a nine-year-old becoming impregnated. I mean, clearly things that aren't even possible, but things that were never discussed over the Internet, even with the decoy or the individuals. But what we also asked for was an instruction dealing with a substantial step because of what we're talking about here, dealing with what happened when he walked into the bowling alley and that he didn't talk to anybody, that he walked out. And so what we were trying to get from the court was an instruction dealing with the substantial intent, showing that it wasn't an equivocal type move, making the government conform with what they're. What was the jury instruction you requested defining a substantial step? It dealt with it must not be an equivocal and it had to be a strong corroboration of guilt. And those were the – that was the language that we were asking for. I was having some difficulty with your argument. I was sort of thinking, well, I think I know what a substantial step is. Why did the judge conclude that the additional definition was unnecessary? Because he said that was the normal type language, that it didn't need anything specific. Our argument was that he went to Las Vegas and he was a magician and there was testimony and evidence that, in fact, he was going to Las Vegas anyway, that he was going to the Suncoast and he didn't do anything once he arrived at the Suncoast. So the argument was he had to make a substantial step. And then – I assume that the substantial step depends a lot on whether the jury believed your client went to Las Vegas for the magic show or whether he was going to find a 14-year-old girl. That's correct, Your Honor. And there was – A substantial step is pretty easy after that, isn't it? Well, if, in fact, that's true, though. And what's equivocal about this is the evidence was shown that he did know Penn & Teller, that he was going there trying to get a job. The other issue then became with what Judge Trout was talking about in the bowling alley. We asked for a spoliation instruction because there was videotape. And then all the wonder is taken out if you have videotape as to what an individual does when he goes in there. But the FBI, with two agents sitting there, didn't preserve the tape. What was the wonder? I mean, there was no dispute, as I understand it, about – except about whether he and she exchanged hi's. No, there was – there was a question about that. About whether they said hi to each other. Yes. And whether there was a recognition. What does that have to do with showing a substantial step? Because if he was interested in dealing with this individual, then he would have approached and dealt with the person. That's the reason they had the decoy out there. But there's no dispute about any of that, is there? I mean, isn't the only dispute whether she said hi to him and he said hi to her? There was a dispute as to the acknowledgment. And the FBI agent that was at – the case agent testified that he made contact and said hello. The testimony from the officer who was a surveillance Suncoast eye in the sky, which they have in these casinos, testified that what the agent said to him was that that's not the guy. And so what we wanted to be able to show, and it was with the videotape, that in fact he didn't have any contact with him. And to show that the FBI agent, who was the case agent testifying, was not testifying factually. And if you read Judge Wallace's opinion in the Vasquez case, that suggests, says flat out the police don't have to go and collect information like this. This was not their surveillance videotape. It becomes theirs. They're both sitting there in the surveillance. Much different than any other case. It becomes theirs? I'm sorry? It becomes theirs? It becomes theirs when they're telling the individual what to watch and they're sitting there right there with him. Because what the relevance was, even at the time of the bail hearing, the government said to the judge, well, we have a videotape that shows all of this. I mean, clearly the videotape takes out the arguments and the guesswork. I fail to see the importance of whether there was a nod or somebody said hi. Other than that, pretty much everybody agrees. The guy walked in there. She was there. He eventually left. And he didn't do anything. And so what is the big deal about the videotape? How is it going to make any difference at all? Because the agent testified that there was an acknowledgement on his part as to that person. That's such an utterly irrelevant detail. It doesn't matter. Our final argument deals with having this remanded to the district court for purposes of making a determination under Booker whether, in fact, they would have granted probation in this matter. Isn't this a mandatory minimum case? It is a mandatory minimum. So how do you get out from under a mandatory minimum? Because of the argument that, in fact, the court- Booker does mandatory minimums? Yes. That there was- It's not a guidelines question anymore. That's Congress saying there's a mandatory minimum. But there's a situation where, in fact, the court could make the determination of whether they wanted to go below the mandatory minimum. We argued that for Booker- What case says you can – Booker can take you below the mandatory minimum? There isn't. And we made the argument- There isn't. There isn't, Your Honor. And that's- It says the opposite, doesn't it? And our case is going the other way. That's correct, Your Honor. You want us to change the Ninth Circuit law? That's correct. You know panels can't do that. Thank you, Your Honor. Thank you, Mr. Potter. Mr. Schlicht. May it please the Court. I'm Daniel Schlicht, and I'm an assisting attorney from the District of Nevada. After Shemana vets, in some cases, possession of reading material is still relevant to proving intent. I don't quite understand how it can't- Excuse me. Go ahead. I don't – I don't understand that. I've looked for a case that says that a library is the same as a prior act. Now, in our Vaux case, it says that the act is similar to the offense charge. Now, I understand that if he had committed some type of illegal activity with a teenager prior, you could bring that in as a prior act. But this wasn't a prior act. This was a library that he had. And although it's in his – in his material, there's nothing that we have as to whether he did anything other than download it. And certainly, it's far different from doing something. Certainly, reading about is different from an act. So because these are dynamite types of issues, all of us who have been in a trial court know how damaging they can be. We have to be very careful with them. Now, I have not found a case, and maybe you can give me one, that having a library about something is the same as the prior act for purposes of this rule. Okay. If you're looking at that in the context of a 404B analysis, that is, is the prior act of possession a 404B, we need to abandon that argument under Shumanifis that says possession of reading material is not the same as the act. It's not a bad act, as that term is defined within 404B. However, I'm assuming you mean by we need to abandon. Well, we took the position in the brief. Let me just back up a little bit in here. You're now backing away something from something in the brief? Only that I'm pointing out to you that in the Ninth Circuit, in the Shumanifis decision, Judge Reinhart stated that possession of reading material that's legal is not a bad act, as that term is defined within 404B. Nor is it relevant to conduct. Well, that's where I want to be able to. Well, yes, but it also says that. And in this case, I don't understand how this material could possibly be relevant to the act. Because there's no incest here. There's no father, daughter, mother, daughter, all the garbage that was in the stories here. There's no issue about that. The e-mails exchange lays out the scenario entirely. Doesn't it? Yes, it does. Well, then why did you need this stuff even? You know, in hindsight, you can always try a case differently, having reached a verdict. Not only that, but the district judge lets the stuff in without even reading it. So he doesn't know what's come in and what's going to the jury. Back to your question of relevancy, how could this possibly be relevant when it's such an explosive issue? The relevancy analysis can certainly, and the test for relevancy under 403 can certainly borrow some of the factors of the test in 404B, which, when you're establishing relevancy for the purposes of intent, you can look to similarity, you can look to proximity. Similarity doesn't have to be exact. A doesn't have to exactly equal B. It's unclear to me what light these particular stories shed on his conduct at all. There's no issue about grooming here. That comes out of the e-mails. Arguably, if you had an issue about it, arguably, the strategy that is embedded in these stories might shed light on whether it was grooming or not. But that's all nobody's quarreling with what's in the e-mails. My position on this is clearly that there is relevancy because the e-mails, although the stories, although they involve incest, father-daughter, the general principle behind them is sex between adults and children. And in this particular case, that's the issue, is that he had the intent to engage in sex as an adult with a child. You mean if there was a case involving whether or not sex was consensual and there's dispute, if the government happens to find a book in the person's library dealing with the issue of rape, that that could go into evidence to show it wasn't consensual, that it indicates that his motive was to rape because there was a book in the library, right? Yes. And you believe that should be admissible? No. I believe that every case should be looked at on its facts and the totality of the circumstances. I'm giving you a hypothetical to test what you said was relevancy. What's the difference between having a book in the library in this case? Certain books or all books need to be evaluated on what they are and how they relate to the case.  The book is on rape, and it's very suggestive that rape is the greatest thing in the world, and you've got a case where there's a dispute as to whether it was consensual sex. Wouldn't that come in under your theory to show the motivation? Suppose that's the only book in the library. The book's in the back seat of the car. Well, wherever the book is, to show that the person has access to it. Has access to it. Those questions are questions that the court needs to make the decision as the gatekeeper as to whether they're relevant. Well, why isn't it plainly wrong to allow a book that you simply have in your possession into evidence without evidence even that he read it? First of all, you can draw the inference. The issue is whether he read it in this case. There are certain facts. I testified that he didn't, and there's nothing that really shows that he did. He didn't read all of them. So, I mean, we don't know whether he read the four or five that you put into evidence or not. But that fact, and the jury brought to be aware that he may not have read it because there was no direct evidence that he did, entitled the jury to give as much or as little weight to the stories that it wanted. But it's so extraordinarily prejudicial. And I mean, the incest thing, it has nothing to do with this case either. So if you're balancing, even assuming that there's some relevance, which I don't see, but assuming that there's some relevance, then what's your argument that this wasn't so prejudicial that it should never have come in, and it wasn't needed for anything, except to make him just look like a real jerk, not just a jerk? What's my argument that it was not so prejudicial it should come in is this. Rule 403, as you well know, says that evidence, although relevant, may be excluded if its probative value is outweighed by dangers of, among other things, unfair prejudice. So unfair prejudice is defined in the Allen case as evidence that tends to induce a decision based upon an improper basis, such as an emotional reaction. In this particular case, the defendant chose to defend these charges on his admission that he fantasized about sex with children. Those stories, although they involved incest in some of them, certainly involved sex of adults with children. Therefore, the emotional appeal, the jury already has been reacted or has been reacted to as an emotional appeal by his admission, I fantasized with sex about sex with children. What more, what more harm can be caused by a story that basically says the same thing? His admission, his defense of incest is even worse than fantasizing about sex with children. You know, at some point when things are so disgusting, can they be even more disgusting, have such an emotional impact on them? I have a question. Let me ask you, did you read these stories? I read them. No, I did not read the details of them. I read the summaries of them that the AUSA provided me. All I have before me was the transcript when the judge went through and we got generalizations. The jury read them. They were submitted to the jury. How are we going to or how are you going to make this decision as to whether or not you're going to take the position that there's no harm, no foul? You haven't read them. The jury did. We haven't read them. Where are they? Nor did the district judge. Well, the stories are in evidence. I read the summary that of the stories that the AUSAs who tried the case provided. Well, let me back up and ask you. I did, too, but what I'm suggesting to you is that I don't see – I don't like to read the summary. I'm just asking you to know whether or not they were harmful unless I read them. Isn't that correct? Can I do it just based on summaries? You can take an inference of the worst-case scenario based on the summaries. Look at it in a light most favorable to the defendant and say these involve incest, they're disgusting. The question becomes, as disgusting as they are, does that invoke an emotional appeal any worse than the defendant's statement that as an adult he fantasizes? Let me ask you a question. You said something about changing the position you had in your brief. As far as the prior similar act is concerned, you still assert that this is a 404B analysis. I'm pointing out to you that in Shimanovitz, Judge Reinhart stated that possession of lawful reading materials is not a bad act as that act is contemplated. But the bad act, as Lee's talking about, is under 404B. So I assume that you haven't withdrawn your position that that is the basis upon which you're defending the ruling of the Court to allow this material in as a prior bad act. No, I'm not. But I'm stating that the analysis, although it is a 404B analysis, the question really needs to be made is whether it satisfies 401 and 403, whether it satisfies 404B or not. Those talk about bad acts. Is that the language? No, under 401 and 403. But it's much broader as to relevancy. And relevancy has to be... Other acts. Let me ask you some other questions here for a second. This information that you tried to get in started out with over 100 stories or something like that. And it was the government intended to put all of this stuff in. Is that right? Yes. And how was it whittled down and how was it presented to the trial judge so the trial judge could understand what the trial judge was dealing with before making the decision? At the end of day two, there was a lengthy discussion with the court, an argument about the admissibility. The prosecution and the defense agreed to talk about it. On the morning of day three, the prosecution offered to put in or limit the actual admission to 12 or so stories. But then during the discussion with the court, limited to five, identified the five to the court. Now, how did the court limit it to five? Based upon the representation of the selection by the AUSA, the trial attorney. Did the court look at the stuff himself? Did the judge look at this stuff before making the decision? The court had, based on the record, the court had the stories, said that he read one... One and a half of them. Yes. And how do you get away with reading just one and a half of them with evidence like this? That means the court didn't even read the lion's share of the information that was going in. Let's take the position... Is that correct? The judge didn't even read it. He did not, by his own admission. So then we have to go into, Your Honor, a harmless error analysis. And based... So don't we have to look at it then? The stories? Yes. Where is the information in the record of exactly what the jury heard? On day three, the first witness... Is it in the excerpt? There's a reference to it in the excerpt, yes. I can't tell you what excerpt record page it is. You don't know that. Okay. I don't have the page with me. Well, testimony is, but the articles are not. The articles were admitted into evidence. I know they were, but they're not part of any record that... That's correct. And we can have them sent to you to read them. I think you better... Okay. We will. ...be going to have to read them. Thank you for letting us have that court. The final point I want to make in terms of the harmless error analysis is what use did the prosecution make of it during closing argument and during the rebuttal argument? The prosecution limited the reference to those simply to reminding the jury to follow the limiting instruction of the court until they can draw an inference consistent or limited by the court's instructions. We're on that totality as our position that if there was error, it was harmless. Thank you. Okay. Mr. Potter, opposing counsel has gone way over his time. If you would like to take one minute for rebuttal, you may. If you don't, that's fine, too. Thank you. The matter just argued will be submitted.
judges: Wallace, Trott, Rymer